Hillsborough,
No. 5082.

HENRY H. FRANKLIN, *Trustee in Bankruptcy*

*v.*

JOHN A. AND PAULA M. WIRZ.

Argued October 3, 1962.

Decided November 30, 1962.

336

*Faulkner, Plaut, Hanna & Zimmerman* and *Henry H. Franklin,* *pro se* (*Mr. Franklin* orally), for the plaintiff.

*Cheever & Sullivan* and *Charles J. Lincoln* (*Mr. Lincoln* orally), for the defendants.

DUNCAN, J. The defendants' initial objection to this suit on the ground that the trustee is not a proper party plaintiff was not preserved in the Superior Court and is therefore not available here. *Fitch Company* v. *Insurance Company,* 99 N. H. 1.

The evidence established that the defendants made a successful bid of $13,500 at the foreclosure conducted by the mortgagee on December 6, 1958. Thereupon a written agreement was entered into by the mortgagee Peterborough Savings Bank and the defendants which acknowledged receipt of a down payment of $1,350 and provided that a deed should be delivered and possession given on or before December 16, 1958. At the trial the parties agreed that all statutory requirements were "completely" complied with by the mortgagee "up through the day that the agreement was signed." It was not disputed that the foreclosure deed was never delivered, that funds required by the defendants in order to pay the purchase price were never loaned to them, and that the balance of the purchase price was never tendered to the mortgagee. It was also undisputed that a second foreclosure was subsequently held and the mortgaged premises sold to a third person for a price which was $942.02 less than the defendants' bid of December 6, 1958.

The principal issue presented at the trial was primarily one of fact, as to whether the defendants' default in payment was caused by the failure of the mortgagee to record the affidavit required by RSA 479:26, or on the other hand resulted from circumstances not attributable to the mortgagee, or to the mortgagors for whom it acted under the power of sale. The statutory provision in question is as follows: "RETURN; EFFECT. The person selling pursuant to the power shall, within thirty days after the sale, cause a copy of the notice of the sale, and his affidavit setting forth fully and particularly his acts in the premises, to be recorded in the registry of deeds in the county where the property is situated; and such affidavit, or a duly certified copy of the record thereof, shall be evidence on the question whether the power of sale was duly executed." RSA 479:26.

The evidence disclosed that the defendants were unsuccessful in obtaining a loan from the mortgagee bank or elsewhere before the agreed closing date of December 16, 1958. By letter from an attorney for the bank dated December 19, 1958, they were notified that they were in default, but that the bank would extend the time until December 29, 1958, in order to afford the Manchester Savings Bank time to process the defendants' application for a loan from that bank.

It appeared from the evidence that, on December 23, 1958 the defendants applied to the Wilton National Bank for a loan, and that the property was inspected on behalf of that bank on the same day. By letter dated December 24, 1958, the Wilton National Bank advised the mortgagee bank that it had voted to make a loan to the defendants, and requested an abstract of title and the proposed deed to the purchasers, to permit the preparation of a mortgage from the defendants to the Wilton National Bank. The letter stated that it would probably be impossible to comply with the December 29, 1958 time limit, and referred to the fact that the mortgagee bank had indicated that it "would be able to extend this somewhat."

On Monday, December 29, 1958, the abstract and a copy of the proposed foreclosure deed were mailed by the mortgagee bank to the Wilton National Bank. On Wednesday, December 31, 1958, the executed foreclosure deed with statutory affidavit, documentary tax stamps, and a statement of the amount due the mortgagee were mailed by it to the Wilton National Bank to be held in escrow. The Wilton National Bank had prepared

a note and mortgage from the defendants to it, and these documents had been executed.

The executed foreclosure deed and accompanying documents were not received by the Wilton National Bank until Monday, January 5, 1959, which was the thirtieth day after the foreclosure. Cf. RSA 479:26, supra. The papers were then transmitted to counsel for the Wilton National Bank on Tuesday, January 6, 1959. Counsel gave the matter no further attention until January 15, 1959, when he requested the mortgagee to affix its corporate seal to the foreclosure deed, which was done. Later, counsel examined the records at the registry of deeds and discovered five attachments against the original mortgagors recorded during a period from May 23, 1958 to December 9, 1958. He testified at the trial that he was disturbed by these attachments, and thereupon examined RSA 479:26, ascertained that it required the affidavit to be filed within thirty days after the sale and "decided since the affidavit hadn't been recorded that I would turn the title down." He further testified: "If I had not turned down this transaction because of my opinion either the title was unclear or it was so burdensome as to create doubt in anybody's mind as to make it not marketable, the transaction would have gone through without any trouble."

The defendants requested the Trial Court to rule that "the mortgagee was under a duty" to record the affidavit in compliance with RSA 479:26. This request was "denied because the mortgagee never received the proceeds of the sale." Aside from the general finding in favor of the plaintiffs, the Trial Court made no findings or rulings except as certain of the defendants' requests were granted. In these circumstances the general finding of liability on the part of the defendants must be sustained since there was evidence upon which it could be made and it was not inconsistent with any special findings made. McGinley v. Railroad, 79 N. H. 320, 321; Foodmaster, Inc. v. Moyer, 101 N. H. 298, 300.

The Court could find from the testimony of counsel for the Wilton National Bank that at all times from and after December 24, 1958 the bank intended to make a loan to the defendants until counsel examined the records at some time after January 15, 1959. It could find that the same bank was aware that the closing date had been extended to December 29, 1958, and that any extension beyond that date must be of short duration. It could find that the executed foreclosure deed and affidavit were in

the hands of the Wilton National Bank on January 5, 1959, and that the grantor's corporate seal could have been supplied and the documents filed for record on that date, had the Wilton National Bank been prepared to make the loan at that time.

The Court was further warranted in finding that the defendants were never in a position to pay the balance of the purchase price, and that their failure to pay or tender it by December 29, 1958, or within a reasonable time thereafter was in no way chargeable to the mortgagee bank. In determining what was a reasonable time, the Court was entitled to consider the requirements of RSA 479:26 and the practice in this jurisdiction of attaching the affidavit to the foreclosure deed for recording. See RSA 477:32.

The defendants became obligated to purchase the property by reason of acceptance of their bid (*Phinney* v. *Bank*, 91 N. H. 184, 189; *Roberge* v. *Cyr*, 84 N. H. 204), as well as by their written agreement. On all the evidence the Trial Court could properly find and rule that the defendants' obligation was repudiated by their failure to seasonably tender the purchase price in accordance with the understanding of the parties, and that this failure was neither caused nor excused by the mortgagee's failure to comply with RSA 479:26 in advance of receipt of the purchase price.

*Judgment on the verdict.*

KENISON, C. J., did not sit; the others concurred.